Good morning, Your Honors. If you'll please the court, my name is David Goldstein and I represent the appellant, Palm Steakhouse. May I proceed? Certainly. Thank you. This case, Your Honor, is the result of a complaint that was filed in the Southern District Federal Court up in Palm Beach, which has what I would say a facially defective complaint. It alleged diversity and there's a plethora of cases in this circuit and the Supreme Court that defines the criteria and who has the burden of proof of setting forth diversity. The original complaint had the following as it referred to the parties. It said Plaintiff Ghanan is an Ohio limited liability company with its principal place of business in Columbus, Ohio. All members or owners of Gahan are residents, not citizens, but residents of the state of Ohio. All the case law deals with the issue of citizenship and domicile as opposed to residency and being able to invoke the jurisdiction of the court. As you all know, this is a de novo proceeding, so you have a right to look at all of these pleadings right from the beginning. It then goes on and says that the defendant, PBGC, which was the former This has been up here before and as I understand it, this court remanded for a factual determination by the district court, and jurisdictional discovery was taken and the district court made fact findings about diversity. Isn't that right? That is, Your Honor, but it's our position that the . . . Okay, I can go into that. Not those allegations. I mean, obviously the allegations were problematic or they wouldn't have led to that first remand, but we're way beyond that, it seems to me. Okay, I just wanted to make sure, but this was the first judicial body to recognize the defects in the pleading of diversity. Yeah, that's why we sent it back. Exactly. And Your Honor, when it did go back, the factual determinations we feel that were made by Judge Middlebrook were in error. His legal standard that he set forth in his order of remand is the legal standard in this jurisdiction and the Supreme Court. So the problem is that he, in his own determination, refused to allow the admission of evidence that proved, in fact, that Mr. Mark Scott, who has not been investigated, has not been determined whether or not he's a citizen of the state of Florida or if he's stateless. There has been no investigation. There has been no proof otherwise. However, the proof did show that Mr. Scott was one of the members of the LLC, the non-entities. We have a fair amount of evidence that he wasn't, right? That he wasn't? Right. Well, that's where we disagree, Your Honor. There's a fair amount of evidence that he was. The K-1s? Well, how about Suzanne Parise's testimony? Well, Your Honor, that testimony is not definitive in making that decision. There's documentary evidence, the tax returns, the K-1s. His own transcript testimony says he was an investor. The other transcript testimony of Mr. Romayo, who is a plaintiff in the appellee, said Mr. Scott is an owner. But aren't we to review the factual determination by the district court for clear error? And if so, if there's evidence to support its findings, don't we have to affirm them? I disagree, Your Honor, because the evidence that you're talking about is not definitive. He, in his mind, dismissed the evidence of the K-1s and the tax returns, which specifically showed that Mr. Scott was a member. The district court cited the 2012 return, which included a K-1, that listed Scott's capital as 0%, right? But Your Honor, you need to know the two important dates here. The two important dates are July 26, 2012 and October 31st and November 1st of 2012. When this particular complaint was filed, the Second Amendment complaint, Mr. Scott was a member at 6% of the entity, the non-corporation of Palm Steakhouse, LLC. That is something that the appellee totally ignored. They failed to investigate it. He testified. They said, well, we couldn't find him or we didn't have an address on him. And Judge Middlebrook said that we were deficient in trying to help and provide it. I thought Mr. Parise testified that Scott wasn't a member and that the 2013 return listed Scott's membership share as 6.6% in error. Your Honor, what took place... Did he testify to that? He testified to it, but prior to that, Your Honor, he said that when Mr. Scott was originally in making his investment, he was an equity investor. It turned into a loan, excuse me, a loan first, then he became an equity investor. He was an equity investor all the way up to 2012 when the main asset of the property was sold. At that point in time, he wanted his money back, so they deemed it to be a loan. That was also explained in the letter affidavit that Judge Middlebrook refused to allow into evidence. He said it was untimely. Well, Your Honor, diversity, citizenship, and jurisdiction can be objected to and brought up at any stage of the litigation. We know that. I mean, it's Civil Procedure 101. That's true, but jurisdictional facts that are found by the district court where there's even evidence in conflict, we review the findings of fact for clear error, right? I'm trying to explain to the clear error to the court was that he did not look at the K-1s because he refused to allow them into evidence, saying they were untimely. Well, now we separately filed the K-1s. This is a court, this proceedings are de novo, so you can look at the K-1s and see that Mr. Scott did not receive a payout until November of 2012. Even if he had a zero capital account, which in 2013 it showed, that doesn't mean he wasn't a member. That doesn't mean that they don't have to go and find out whether or not there's a violation of the criteria required in order to have diversity. I thought there was a CPA who testified that zero percent capital meant that he wasn't a member. I'm not familiar with that, Your Honor, but all I'm saying, that was in 2013, after the whole transaction was already over. At the time, the most important thing, from what I read in Traviglio, which Your Honor was involved in on that panel, is that it's at the time the case is filed, who are the members? Mr. Scott, in July of 2012, still had an interest, an equity interest, in Palm Steakhouse, LLC. Now, all the members in Palm Steakhouse, LLC, were Mr. Roderman and individual. John Caruso, who they never even dealt with, was a two percent profit sharing individual. And the case law specifically says that they have to investigate all the different layers of the non-corporate entities. Both the 2012 and 2013 returns failed to list Caruso as a member? They do, Your Honor, but still, as a two percent owner, they didn't inquire into that. That's a layer that involves a profit sharing, and should have looked into it. But the main individual was Mark Scott. He testified, gave his address at the testimony, at trial, he gave his address and asked what it was. However, counsel failed to inquire any further. He was still believing, based upon the allegations set forth in his complaint that I began to read to the court, that residency was the issue of diversity, of citizenship, which is 100 percent wrong. We know that. However, he apparently didn't know that at the time of trial, otherwise he could have asked Mr. Scott, what is your citizenship? Where are you domiciled? He failed to follow that up. And that's why this court, when you saw it, I assume, referred it back to the limited purpose to determine whether there was diversity of citizenship, so that the judge would know that any of the plaintiffs and any of the defendants did not reside, or were not citizens of the same state. That did not take place. Okay, Mr. Goldstein. Based upon that, Your Honor, in conclusion, the complaint should be dismissed, attorney's fees and costs should be given to the appellant. Okay, you've saved five minutes for rebuttal. Mr. Elder. Thank you, Your Honor. May it please the court, I have the privilege of representing the appellee in this case. When the complaint was filed by myself, it incorrectly used the term resident when it should have used citizenship. I know better. I didn't fall off the turnip truck yesterday, but it was a mistake, and the court threw back the jurisdictional question. Now, by way of . . . We know about that. We know that jurisdictional discovery was taken. We know that there's been a hearing. We know that there's been evidence about this. Now, did the district court err in making its factual determination? It clearly did not commit any clear error. There had . . . You agree that that's the standard? Yes. There had never been an issue raised prior to the jurisdictional question about these two alleged members being members. In fact, the appellants moved to dismiss my complaints claiming lack of subject matter jurisdiction two times, claiming that there was no subject matter jurisdiction because they were all from Florida and we were from Florida because we allegedly had a principal place of business there. That's not the standard. It's where the members are citizens, and my client's member is from Ohio. They always alleged in their motion to dismiss that they were from Florida. Then they filed affirmative relief. They filed counterclaims where they alleged there was complete diversity in their counterclaims. They seized on this opportunity of this mistake and for the first time literally tried to concoct this argument that there were two new members that had never been mentioned before. We did the jurisdictional discovery. I deposed all of the members, including opposing counsel, as part of the jurisdictional discovery. There is no dispute in the record from that jurisdictional discovery that there's complete diversity. We had the federal tax returns, and we agree that the relevant time period is 2012. All the K-1s showed that these two gentlemen were not members. I went to the effort of getting an expert witness, the CPA, Earl Wald, whose affidavit is in the record. He said, this is proof that these are the members, and it didn't include these two gentlemen. Either they were being untruthful to the federal government or to the court. Then finally, Susan Farisi, I deposed her. She's the managing member of the appellate, and she testified clearly that these two gentlemen were not the members, and all of the witnesses, other than these two gentlemen, testified they were Florida citizens. My client testified in the record he's an Ohio citizen, which creates complete diversity. Respectfully, we would ask the court to affirm on that issue. Okay? The only thing that's been raised this morning is diversity jurisdiction. I don't know whether you want to address anything else. If you do, then that, of course, gives your opponent the opportunity to say things in response that you'll never have a chance to respond to. If you don't say anything about the other issues, then he won't be able to bring them up. That's your choice. My colleague is always so subtle in his . . . It's Friday. I would respectfully ask the court to affirm the decision. Thank you. Mr. Goldstein? You understood all that, Mr. Goldstein? I did. I'm going to stick to diversity, Your Honor, because without it, everything else is moot. I would like to read into the record, though, to the court from the case of group . . . Here's my problem, Mr. Goldstein. It seems to me the district court was entitled to credit the evidence that Mr. Elder was referring to and to make findings that, in fact, these two individuals were not members and that we review that for clear error. Am I wrong about that? I respectfully say it is, Your Honor. I think Judge Middlebrook erred by not allowing into evidence the K-1s that specifically showed, and this, as I said, is de novo, so you can look at the documents . . . And they should show, Your Honor, the 6% . . . The district court clearly considered that. Well, then if they clearly considered it, there's no way he could have come up with any other decision, Your Honor, when you're a 6% . . . He showed his capital at 0%. That's in 2013. The issue is when the case was filed, the case law deals with . . . A-1 for 2012 showed it at 0%. Your Honor, because he got paid off in 2012. That was in November, and I can show it to you from the record. It's . . . 556 in the record shows the payoffs that were made by Mr. Rotterman. They got paid off . . . Mr. Scott got paid $300,000, the return of his initial loan to the company, which was then made into equity. That's why it showed he had 6%. That was made in October of 2012. The case was filed on July 26, 2012. At the time that this case was filed, it did not comply with the requirements of listing all of the non-corporate entities of which Mr. Scott was one of them. He still was an equity holder in Palm Steakhouse, the appellant, until he got paid off in November. Then the tax returns were filed for 2012 by April of the following year, they got filed. The question here, Your Honor, is the case law is clear. The Canoding case, the McNutt v. General Motors acceptance, and even Trivaglio, which you said on that panel, it's clear. You have to list each of the . . . If you look at the whole thing, Your Honor, the whole deposition, she said she was confused. I objected. Then she said she wasn't sure. It was a pretty simple question. I think it calls for a yes or no answer. Did she testify that Scott was not a member? She said that, Your Honor, but with an explanation that took place after that statement. The court has to look at the whole deposition to make that determination. It was taken out of context. The key here . . . Where would I go to see clearly in this record an uncontradicted fact that, in fact, he was a member? It seems to me if she testified to that, you may say taken out of context, it sounds to me like evidence that the district court could rely on. How am I to know that there's no dispute here and that, in fact, Scott was a member? I thought that Parisi's testimony wasn't. All the appellate briefs, Your Honor, set forth the fact of who the members were. The tax returns show who the members were. What the court is doing is looking at the tax return that was filed in April for the year before. The year before, Mr. Scott got paid off. He was no longer there. His capital account was zero. Even if you have a capital account at zero, you have sweat equity, you have a lot of different things that are taken into consideration to determine whether or not somebody still has an interest in a corporate or an LLC. The non-corporate entities were Barry Rotterman, Mark Scott, and the two trusts, the Nolita Trust and the PBGC Trust. In his complaint, he sues on behalf of PBGC and says that was the former name for Palm Steakhouse. However, Your Honor, the tax returns are clear up until that point. On the date of the filing of the complaint, which is the measure of whether or not there was diversity, he was still a member of Palm Steakhouse, formerly known as PBGC. Thank you, Mr. Goldstein. We have your case. We'll take the second case, Hernandez v. Acosta Tractors.